*To be Argued by Michael H. Sussman*

# 24-3016

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

--------------------------------------------------------

MEGAN E. FAY,

*Plaintiff-Appellant,*

v.

MARY BARBERA, THEODORE BROVARSKI, AND COUNTY OF
ROCKLAND,

*Defendants-Appellees.*

--------------------------------------------------------

**On Appeal from an Order and Judgment of the
United States District Court for the Southern District of New York**

---

## APPELLANT'S BRIEF-IN-CHIEF

---

SUSSMAN & ASSOCIATES
*Attorneys for Plaintiff-Appellant*
1 Railroad Avenue, Suite 3
P.O. Box 1005
Goshen, New York 10924
(845) 294-3991 [Tel]
(845) 294-1623 [Fax]
sussman1@sussman.law

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................... ii

PRELIMINARY STATEMENT .....................................................1

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION.....1

STATEMENT OF ISSUES PRESENTED................................................1

STATEMENT OF FACTS ..............................................................2

SUMMARY OF ARGUMENT .......................................................9

STANDARD OF REVIEW ............................................................9

ARGUMENT ..............................................................................10

    Point I

    The Complaint states a plausible claim for relief .........................................10

    Point II

    The Fourteenth Amendment permits the claims asserted against the individual Appellees .....................................................15

    Point III

    The district court erroneously dismissed the County ...................................17

CONCLUSION .........................................................................18

CERTIFICATE OF COMPLIANCE ..................................................19

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*,
    566 U.S. 662 (2009)................................................................................10, 11

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................10

*Burlington Industries, Inc. v. Ellerth*,
    524 U.S. 742 (1998)......................................................................................16

*Hafer v. Melo*,
    502 U.S. 21 (1991)........................................................................................14

*Jett v. Dallas Independent School District*,
    491 U.S. 701 (1989)......................................................................................14

*Legal Aid Soc'y v. City of New York*,
    114 F. Supp. 2d 204 (S.D.N.Y. 2000) ..........................................................17

*Littlejohn v. City of New York*,
    795 F.3d 297 (2d Cir. 2015) ...................................................................11, 12

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973)......................................................................................11

*Monell v. Department of Social Services*,
    436 U.S. 658 (1978)................................................................................14, 17

*Patterson v. County of Oneida*, N.Y,
    375 F.3d 206 (2d Cir. 2004) .........................................................................16

*Purdy v. Town of Greenburgh*,
    178 F. Supp. 2d 439 (S.D.N.Y. 2002) ..........................................................17

*Savino v. Town of Southeast*,
    983 F.Supp.2d 293 (S.D.N.Y. 2013) ............................................................14

*Selevan v. New York Thruway Authority*,
  584 F.3d 82 (2d Cir. 2009) .............................................................10

*Sorlucco v. New York City Police Department*,
  971 F.2d 864 (2d Cir. 1992) ...........................................................14

*Vega v. Hempstead Union Free Sch. Dist.*,
  801 F.3d 72 (2d Cir. 2015) ........................................................11, 12

*Village of Arlington Heights v. MHDC*,
  429 U.S. 252 (1977).........................................................................17

*Wrighten v. Glowski*,
  232 F.3d 119 (2d Cir. 2000) ...........................................................16

## **STATUTES**

28 U.S.C. § 1291 ...................................................................................1

28 U.S.C. § 1331 ...................................................................................1

42 U.S.C. § 1983 ...................................................................................1

42 U.S.C. § 1988 ...................................................................................1

## **FEDERAL RULES**

Fed. R. Civ. P. 8(a)(2) .......................................................................10

Fed. R. Civ. P. 12(d)(6).....................................................................10

iii

## PRELIMINARY STATEMENT

Contrary to the decision below, the Complaint sets forth plausible claims of gender discrimination against the individual Appellees and properly names the County of Rockland, which delegated authority to both and allowed them to engage in discriminatory action, as a necessary party to effectuate complete relief.

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

Appellant alleges that Appellees Barbera and Brovarski intentionally violated her right to Equal Protection of the law on the basis of her gender in violation of the Fourteenth Amendment, and so the district court had jurisdiction pursuant to 28 U.S.C. § 1331, as well as 42 U.S.C. §§ 1983 and 1988. As the district court dismissed the Complaint for failure to state a claim and Appellant timely noticed this appeal, this Honorable Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED

Whether the district court erred in dismissing the Complaint for failure to state claims of intentional sex discrimination against Appellees Barbera and Brovarski and whether the district court erred in dismissing the County Appellee as a necessary party to effectuate complete relief?

## STATEMENT OF FACTS[1]

Appellant Megan E. Fay is a female of legal age who resides within this judicial district. Appellee Mary Barbera is the Undersheriff of the County of Rockland, resides and works in this judicial district and is a state actor who may sue and be sued. Appellee Theodore Brovarski is a Chief employed by the County of Rockland, works in the Sheriff's Department in this judicial district, and is a state actor who may sue and be sued. Appellant sued both Barbera and Brovarski individually for engaging in gender bias in violation of the Equal Protection clause of the Fourteenth Amendment and named Appellee County of Rockland as a party necessary to provide her make whole relief.

At all relevant times, and as the Undersheriff, Appellee Barbera determined, or had significant influence, over who the Sheriff's Department hires to serve as patrol officers and as transport officers [relief]. Appellee Barbera was personally involved in each of the hiring decisions which form the basis for this Complaint. As Chief, Appellee Brovarski had operational authority for the transport officers, including the relief transport officers, and decided that Appellant could not continue in that position in and after September 2023.

---

[1] The Statement of Facts is taken directly from the Complaint (JA-7-14), which the district court accurately summarized in its decision below (JA-19-22).

Members of the Sheriff's road patrol are appointed from the civil service list created as a result of such examinations. In the fall 2016, Appellant took a written civil service examination for the title of police/patrol officer. In July 2017, Appellant took and passed the physical examination required for appointment to this title. In or about February 2018, Appellant commenced the Police Academy, for which she paid with her own funds. Appellant excelled at the Academy, winning honors for her performance.

In or about October 2018, the Sheriff's Department hired Appellant as a transport relief officer and assigned her to work between 8-4 pm on both weekdays and weekends. Appellant was one of very few women so employed. Following this appointment, Appellant remained on the civil service list for appointment to the title of Patrol Officer.

In July 2019, Appellant received a canvass letter querying her continued interest in the position of Patrol Officer. Appellant responded affirmatively and interviewed for, but was not appointed to, this position.

In the spring 2020, Appellant learned that the Sheriff's Department had disqualified her from appointment claiming that she had provided an incorrect residency address. Appellant had received no other notice that she had been removed from the list of qualified candidates. Learning of her disqualification, Fay called Appellee Barbera and explained that she had provided a correct address after

3

moving from her marital residence to West Nyack.  After this meeting, Appellant was reinstated to the civil service list.

In March 2021, the results of a second civil service examination for the position of Patrol Officer were released.  Appellant attained the highest score, making her eligible for appointment to this title.  She responded affirmatively to a second canvass letter, again expressing interest in appointment to the title of Patrol Officer.  However, Appellant was not given an interview before appointments were made from the list.

In late summer 2021, after others were selected from the list, two persons, Sgt. Matt Meyers and Chief Barbera (Appellee Barbera's husband), initiated conversation with Appellant concerning her status.  In separate conversations, both expressed concern that the Appellant had not been appointed to the title of Patrol Officer the prior month.  Sgt. Meyers told Appellant that appellee Barbera does not appoint women to this title, especially ones who look like Appellant, and that Appellant was too pretty to be appointed.

The next day, Chief Barbera told appellant the same thing – that "Mary," his wife, does not appoint women to the position: "You won't ever see that with her. You are too pretty."

In March 2022, Appellee Barbera again denied Appellant appointment, this time to the position of Deputy Sheriff in the Civil Division, which Appellee Barbera

administered. After learning that Appellee Barbera again passed her over for a permanent appointment, Appellant called the Undersheriff to inquire why she had not been interviewed and what she could do to improve her chance of being promoted. Appellee Barbera told Appellant that she did not have to interview her and had selected an internal candidate for the last position. That candidate was a male, who had previously been assigned to, but been inactive in, the transport unit. Appellant responded that she, too, was an internal candidate, as she had actually worked for the Sheriff's Department for several years in that capacity, receiving excellent reviews. When Appellant queried what more she needed to do to obtain an appointment to a permanent patrol position, Appellee Barbera provided no substantive response.

Appellant was better qualified for this appointment than the male appointed in her stead, and Appellee Barbera's action in supporting the male for promotion was a further act of intentional gender-based discrimination.

Since 2021, the Appellant has not been appointed to the position of Patrol Officer as Appellee Barbera remained highly influential in that appointment process and, by dint of these actions, Appellant lost salary and pension benefits.

During the summer of 2023, desiring permanent civil service status, Appellant accepted the position of full-time code enforcement officer with the Town of

Clarkstown. Until then, Appellant had continued to work as a part-time transport officer [relief].

After accepting this position in Clarkstown, Appellant wanted to continue to work part-time for the Sheriff's Department and sought to remain on the separate weekend schedule being used for staffing transport needs. Appellant requested that her superiors include her on the weekend schedule. Her Sergeant and Lieutenant supported this request for weekend shifts. Appellant's Lieutenant told her that he would grant her request. But after she submitted a form showing her acceptance of another primary job and requested leave from Appellee Brovarski to continue to receive and fulfill weekend relief assignments, her Lieutenant and Sergeant both told her that their superiors, specifically Appellee Brovarski, would not permit her to do so unless she committed to work four shifts per two week pay period. If Appellant was unwilling to commit to this requirement, her superiors advised her, Appellee Brovarksi required her resignation.

The Sheriff's Department never had a policy requiring transport officers [relief] to work four shifts per pay period to be scheduled for weekend shifts. The same requirement has not been applied to at least one similarly situated male, who Appellee Brovarski permitted to continue working at the Sheriff's Department as a transport officer relief, taking only weekend shifts. Moreover, the requirement imposed upon Appellant contravened longstanding department practice, since

persons have remained part of the transport officers' unit even though they did not work for months doing transport.

In addition to imposing this requirement on, and only upon, Appellant, and rather than permitting her to fulfill this coverage obligation by identifying other transport officers who could fill shifts otherwise assigned to her, which is the common practice in the transport unit when an officer cannot cover assigned shifts, Appellee Brovarski demanded that Appellant swap shifts with any such officer, that is, work weekday shifts during her regularly scheduled hours with the Building Department in the Town of Clarkstown.

Appellant advised her immediate superiors that she could not meet this previously non-existent requirement and protested its enforcement against her. Her immediate superiors recognized the selective enforcement of this previously non-existent requirement but continued to enforce it at Appellee Brovarski's direction. Appellant's lieutenant advised her that, absent her compliance with this policy, she would need to resign as a transport officer [relief]. To date, Appellant has refused to resign and continues to request that she receive only weekend assignments, as others have done.

Appellees' discriminatory actions as set forth above have caused Appellant monetary loss, emotional anguish, and undue mental stress.

Based upon these facts, Appellant alleges that, by intentionally and repeatedly refusing to hire appellant as a Patrol Officer or a Deputy Sheriff on the basis of her gender, appellee Barbera violated the Equal Protection Clause of the United States Constitution, as made actionable to her by 42 U.S.C. § 1983, and by imposing and/or enforcing policies upon Appellant which have not been applied to others, Appellee Brovarski intentionally discriminated against her on the basis of her gender and so violated the Equal Protection Clause of the United States Constitution, as made actionable against him by 42 U.S.C. § 1983.

The Complaint further avers that "[P]roviding women with equal rights and opportunities in the workplace has long been a clearly established and fundamental constitutional right and that "[b]y intentionally imposing barriers upon [Appellant's] employment career advancement and subordinating her interests to those of less qualified males, [Appellees] both acted with wanton disregard for [Appellant's] constitutional right to be free of gender-based discrimination, warranting the award of punitive damages.

Finally, the Complaint alleges that to "implement full relief, Appellee County of Rockland is, or may be, a necessary party." In her Prayer for Relief, Appellant seeks an award of back and front pay with interest, an order that Appellee County of Rockland appoint Appellant retroactively to the position of Patrol Officer, with retroactive benefits and pension rights and awards of compensatory and punitive

8

damages against appellees Barbera and Brovarski, as well as attorneys' fees and reasonably incurred litigation costs

## SUMMARY OF ARGUMENT

Since the Complaint plausibly alleges that the individual Appellees engaged in intentional gender-based discrimination, the district court erred in dismissing it. After recognizing that the set forth facts, which explicitly demonstrate gender-based discriminatory motives to Appellee Barbera, the district court erred in concluding that it made no such allegations. Additionally, the Complaint identifies male comparators, who both Appellees treated more favorably than Appellant, and alleged that Appellee Brovarski deviated from practice when he imposed new requirements upon Appellant as a condition for her remaining employed at the Sheriff's department as a relief transport worker. Likewise, Appellant also properly named the County of Rockland as a party necessary to the grant of relief and the district court erroneously dismissed that party as well.

## STANDARD OF REVIEW

This Court engaged in *de novo* review of the district court's order granting appellees' motion to dismiss.

## ARGUMENT

## Point I

### The Complaint states a plausible claim for relief.

In determining a motion for failure to state a claim under Fed. R. Civ. P. 12(b)(6), this court liberally construes the Complaint, accepts all factual allegations as true and draws all reasonable inferences in appellant's favor. *See Selevan v. New York Thruway Authority*, 584 F.3d 82, 88 (2d Cir. 2009) (citations omitted). The court must determine whether the complaint "state[s] a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This inquiry is "context-specific" and "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 566 U.S. 662, 679 (2009).

Where the factual content of the pleading "allows the court to draw a reasonable inference that the appellee is liable for the misconduct alleged," the pleading "has facial plausibility." *Id.* at 678. "The plausibility standard is not akin to a 'probability requirement,'" see id., and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts [pleaded] is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (citations omitted). Indeed, a pleading need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Iqbal*, 566 U.S. at 678-79. If, accepting all well-pled factual allegations as

true, the court finds the complaint "plausibly give[s] rise to an entitlement to relief," *see Iqbal*, 566 U.S. at 679, it must deny the motion.

Contrary to Appellees' claim below, Title VII is not the exclusive remedy for employees subjected to racial or gender-based discrimination. This Court has squarely rejected any such proposition. "The Fourteenth Amendment provides public employees with the right to be free from discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). "Consequently, public employees aggrieved by discrimination in the terms of their employment may bring suit under 42 U.S.C. § 1983 against any responsible persons acting under color of state law." *Id.* "Once the color of law requirement is met, an appellant's equal protection claim parallels [a] Title VII claim, except that a § 1983 claim, unlike a Title VII claim, can be brought against an individual." *Vega*, 801 F.3d at 88.

Discrimination claims brought under Section 1983 are evaluated under the familiar burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015). However, at the motion to dismiss stage, the Court focuses "only on whether the allegations in the complaint give plausible support to the reduced prima facie requirements that arise under McDonnell Douglas in the initial phase of a litigation." *Id.*

"[T]o defeat a motion to dismiss . . . in a Title VII [or Section 1983] discrimination case, a appellant must plausibly allege that (1) the employer took adverse action against [her], and (2) [her] race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega*, 801 F.3d at 87. Further, at this stage, "an appellant must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* Importantly, this is a minimal burden." *Id.* at 85.

"The fact that an appellant was replaced by someone outside the protected class will ordinarily suffice for the required inference of discrimination at . . . the pleading stage." *Littlejohn*, 795 F.3d at 313.

Here, the Complaint alleges that Appellant fully qualified for the position of patrol officer, that acting in her individual capacity and as a state actor, Appellee Barbera repeatedly passed her over for the position, hired a less qualified male and that her own husband told Appellant that she would not be placed in the position because Appellee Barbera did not place women in such positions.[2]

---

[2] The Complaint notes that both individual Appellees are sued in their individual capacities (JA-7 ¶ 2).

The district court held these allegations insufficient to plausibly allege gender bias, requiring Appellant to plead more than is required to set forth a claim. This Court should strongly reject imposing such a heightened pleading requirement or further conflating the standard employed in adjudicating motions to dismiss and motions for summary judgment.

Appellant's allegations plausibly set forth a claim of unconstitutional and intentional gender discrimination violative of the Fourteenth Amendment (not section 1983, which is a jurisdiction bearing provision) and, as a state actor, Appellee Barbera, may be held liable for violating Appellant's constitutional rights if Appellant can demonstrate at trial that she was not selected for this position and that her gender substantially contributed to this adverse action, as is alleged.

Likewise, the Complaint plausibly alleges that appellee Brovarski applied rules to Appellant, a woman, that he did not apply to males in a similar situation – that is, males who could not work the assigned number of shifts. Again, if Appellant can ultimately establish this disparate application of substantive rules to her as opposed to similarly situated males, she will prove her claim under the Equal Protection clause for gender discrimination. Accordingly, this claim is plausible.

Below, Appellees argued that, to sustain claims of Equal Protection violations against them as state actors under the Equal Protection Clause, Appellant must plead some "policy" or "practice," as would be required for a *Monell* claim against a

municipality. But, in doing so, they misunderstand and misstate applicable law. Patterson, supra. to which appellees cite for this proposition does not so hold. Instead, there, the Second Circuit held to the contrary, "… when the appellee sued for discrimination under § 1981 or § 1983 **is a municipality — or an individual sued in his official capacity**, *see Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (claim against a municipal employee in his official capacity is deemed brought against the municipality itself) — the appellant is required to show that the challenged acts were performed pursuant to a municipal policy or custom, *see*, *e.g.*, *Jett v. Dallas Independent School District,* 491 U.S. at 733-36, 109 S.Ct. 2702, (§ 1981); *Monell v. Department of Social Services*, 436 U.S. 658, 692-94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (§ 1983). To show a policy, custom, or practice, the appellant need not identify an express rule or regulation. *See*, *e.g.*, *Sorlucco v. New York City Police Department*, 971 F.2d 864, 870 (2d Cir. 1992)." (emphasis added).

Here, Appellant sues *individual* state actors in their *individual* capacities. *See also*, *e.g.*, *Savino v. Town of Southeast*, 983 F.Supp.2d 293, 301-04 (S.D.N.Y. 2013) (defendant Tessmer, sued in his individual capacity, may be held liable under Equal Protection clause for discriminatory treatment of Savino absent showing of any municipal policy or practice as he was final decision-maker and made enforcement policy). The claim advanced here is that these individuals violated Appellants'

14

constitutional rights, not that the County of Rockland did so pursuant to an official policy or practice, and that claim is cognizable under the Fourteenth Amendment.

The balance of Appellees' argument below read like an opening statement, pointing to reasons the evidence Appellant adduces in the Complaint is insufficient to establish her burden of proof. In that recitation, though, Appellees are disingenuous, for instance characterizing the comments by Appellee Barbera's husband, a Chief in the Department, about his own wife's intent not to place women in patrol as those of "an employee," not the Chief of the Sheriff's Department, as he was. The district court repeated this error, failing to account for the direct evidence of gender bias cited in the Complaint. Indeed, rather remarkably, after summarizing the Complaint and noting its references to such direct evidence of admissions by a department chief and a superior officer, both of whom confirmed Appellee Barbera's gender bias, the district court somehow concluded that "the record is devoid of facts alleging that Barbera discriminated against plaintiff on the basis of gender" (JA-27).

## Point II

### The Fourteenth Amendment permits the claims asserted against the individual Appellees.

Below, Appellees submitted, with no support, that Appellant could not sue officials in their individual capacity for violations of the Fourteenth Amendment but had to rely on, and only on, Title VII to advance claims of intentional gender discrimination.

15

This argument lacks any merit and contradicts this Court's holding in *Vega*, *supra*. Instead, individual Appellees may NOT be sued under Title VII, which authorizes suit only against "employers." *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (*per curiam*); *see*, *e.g.*, *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995) ("individual appellees with supervisory control over a appellant may not be held personally liable under Title VII"), abrogated on other grounds by *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). *See Patterson v. County of Oneida*, N.Y, 375 F.3d 206, 221 (2d Cir. 2004).[3]

To hold state actors themselves responsible for unconstitutional employment practices, an Appellant obtains jurisdiction through, *inter alia*, 42 U.S.C. § 1983 to enforce the Fourteenth Amendment. That Title VII and Section 1983 employ different statutes of limitations is of no moment as officials like these Appellees are fully apprised of their responsibilities under both and the differing limitations periods, which are certainly nothing new. *See Patterson*, *supra*, at 225.

---

[3] An plaintiff who files against individual state actors for violating their constitutional rights, as here, is not required to file an EEOC charge. There is no exhaustion requirement in such cases.

## Point III

**The district court erroneously dismissed the County.**

Appellees also misread or misunderstand the Complaint, suggesting that the allegation that the Sheriff's Department did not have a policy but invented one for Appellant supported its motion to dismiss. Of course, the opposite is true – the absence of a policy and then its invocation against Appellant and the more favorable treatment of a similarly situated male both go to demonstrate Appellee Brovarski's discriminatory conduct toward Appellant. *See Village of Arlington Heights v. MHDC*, 429 U.S. 252, 267 (1977).

"[A] § 1983 claim may be brought against a municipality where a 'policy or custom' of the municipality deprived the appellant of his constitutional rights." *Purdy v. Town of Greenburgh*, 178 F. Supp. 2d 439 (S.D.N.Y. 2002) (internal citations omitted). "To establish municipal liability, an appellant must show that an identified municipal policy or practice was the 'moving force [behind] the constitutional violation.'" *Id.* (citing *Monell*, 436 U.S. 658, 98 S. Ct. 2018 (1978)). "Where no municipal policy exists, liability may nonetheless arise from a course of action tailored to a particular situation by a municipal decision maker, provided that the decision maker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* (citing *Legal Aid Soc'y v. City of New York*, 114 F. Supp. 2d 204, 231 (S.D.N.Y. 2000)) (internal quotation marks omitted).

Here, the failure to plead a policy or practice is not fatal, where the Complaint alleges the County delegated policy-making authority over critical employment decisions to Appellees, who exercised this authority to implement gender discrimination, and the County of Rockland is named as a party necessary for the effectuation of complete relief, that is, to implement "an order that [it] appoint Appellant retroactively to the position of Patrol Officer with retroactive benefits and pension rights."

## CONCLUSION

Appellees had no good faith argument below for either of their central propositions, which are contrary to long established Supreme Court and Circuit precedent. Instead of rejecting them, the district court dismissed a plausible complaint, which met contemporary pleading requirements, and imposed a heightened pleading standard. This Court should reverse and remand.

Dated:    Goshen, New York
          February 5, 2025          Respectfully submitted,

                                SUSSMAN & ASSOCIATES
                                *Attorneys for Plaintiff-Appellant*

                                By:   */s/ Michael H. Sussman*
                                    Michael H. Sussman, Esq.
                                    1 Railroad Avenue, Ste. 3
                                    P.O. Box 1005
                                    Goshen, New York 10924
                                    (845) 294-3991 [Tel.]
                                    (845) 294-1623 [Fax]
                                    sussman1@sussman.law

## CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 3,859 words, excluding those parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I hereby certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in Time New Roman 14-point type for text and footnotes.